Spalding, J.
At the October term of said court, A, D. 1849, the plaintiffs in error were indicted, under the twenty-fourth section of the act for the punishment of crimes, for maliciously shooting at one Jane E. Britton with intent to wound, etc.
The indictment contains twenty-four counts, but inasmuch as the jury returned a verdict of guilty upon the second count only, our attention will be confined to the charge as it is in that count set forth, to wit: “ That the said Jane Henry and Martin T. Britton, on the eighteenth day of October, in the year eighteen hundred and forty-nine, at the county of Stark aforesaid, with a certain gun maliciously did shoot at one Jane E. Britton, with intent her the said Jane E. Britton then and there, and thereby, to wound, contrary to the form of the statute,” etc.
After verdict a motion for a new trial was submitted on the ground, among other things, that said verdict was against the evidence. Said motion having been overruled, and the ruling of the court in that behalf excepted to, with the whole testimony spread upon the record, we are called upon to say whether the proof will warrant a jury in finding a verdict of guilty.
*33 It is true, that exceptions are taken to the sufficiency of the count on which the verdict was returned, as well as the charge of' the court. But, however much we may have desired that the pleader had been more explicit in stating the offense, we deem it advisable to let the case turn upon the weight of the evidence rather than upon any supposed defect in the pleadings or any alleged error in the instructions given by the court to the jury.
On the trial a mass of testimony was introduced, from which we gather the following facts :
The plaintiffs in error were living together in adultery at the house of Britton. The prosecuting witness, claiming to be the1 wife of Britton, became involved in a street quarrel with her husband’s concubine. The women were on opposite sides of a street four rods in width. After saluting each other with many opprobrious epithets, and assaulting each other with stones and gravel, Jane Henry ran into the house of Britton, and very soon returning into the street with a fowling piece, discharged, the same towards the person of Mrs. Britton, some fifty feet distant, and then ran back. There was evidence tending to show that Britton, the husband, put the said gun into the hands of Jane and told her to blow his wife up.
Mrs. Britton sustained no injury. In giving her testimony on the trial she said,
“ I next saw her (Jane Henry) come out with a gun. I had went into Kissel’s house at the time, and was looking out of the-door. I came out of the door and faced her ; ‘opened my cardinal and told her to fire away. * * * The gun made a. noise as if it was loaded, though I was not hit by any thing discharged from it. When I first saw her I did not think the gun was loaded, or I would not have opened my bosom and moved towards her.”
It was proved that the gun in question had been left at the house only two hours before, by one Zachary Chorpening, who-testified that he borrowed Britton’s “ double-barrel ” and left *34 his own gun there until he returned from hunting. That four or five weeks before this, he cleaned his gun and put in powder and wadding, and was going to fire it off, but his wife, who was sick, objected to his shooting, and he put it aside with the charge in, and it remained in that state until he took it to Brit* ton’s house.
For the purposes of the trial, it was admitted by the prosecuting attorney that one James Watson, if present, would testify that said gun so used by said Jane Henry, was loaded with a light charge of powder and wadding of tow, and could not have effected any injury in the hands of either of the defendants.
When the general assembly saw fit to make imprisonment in the penitentiary the penalty for maliciously ■ shooting at a person with intent to kill or wound, no “ children’s play ” was -contemplated as demanding so great severity of punishment True, the offense may be found complete, and the culprit re ceive the whole penalty of the law, without the infliction of the least injury upon the object of his malice. But then, if the intended victim shall have escaped harm, he must have been in peril of “ life, limb, or body,” else the punishment is altogether disproportioned to the offense.
In the King’s Bench of England, the following ruling was held correct. Where an indictment alleged that the defendant shot at the prosecutrix with a pistol loaded with gun-powder and other destructive materials, and it appeared that the pistol contained no ball or shot, but gun-powder and wadding only, the judge told the jury, that whether the pistol was loaded with gun-powder and ball, or other destructive materials, or with gunpowder and paper only, if the prisoner fired it so near the person of the prosecutrix, and in such a direction as that it would probably kill her, or do her some grievous bodily harm, the ease was within the statute. Rex v. Kitchen, R. & R. 95. See Arch. Cr. Pl. 350.
We recognize this as law, and we hold the converse of the proposition to be true, that when the defendant shot at the *35 prosecutrix with a pistol loaded with gun-powder and wadding only, and the prisoner fired it at so great a distance from the person of the prosecutrix that it could not probably do her the least bodily harm, the case was not within the statute.
In the case under consideration the gun contained a slight charge of powder with wadding of tow. It was discharged by one woman at the person of another, with a distance of fifty feet intervening, and no probable injury could result from the act.
In our opinion the case is not within the statute. The judgment of the court of common pleas is reversed.